UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                              :

ISIDRO GARCIA, ELIAZAR VALENTIN,    :
and FERMIN QUICHE, *individually and on*  :
*behalf of others similarly situated*,      :
                                              :

                                    Plaintiffs,   :

                                              :

                - against -             :

                                              :

SAIGON MARKET LLC (d/b/a SAIGON     :
MARKET), HAU NGUYEN, and          :
JOHNATHAN NGUYEN,             :
                                              :

                               Defendants.  :
                                              :
--------------------------------------------------------X

| USDC SDNY |
| :--- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __9/24/2019__ |

15-CV-9433 (VSB)

**OPINION & ORDER**

Appearances:

Colin James Mulholland
Law Offices of Colin Mulholland
Astoria, New York

Gennadiy Naydenskiy
Michael Antonio Faillace
Michael Faillace & Associates, P.C.
New York, New York

Shawn Raymond Clark
Phillips & Associates
New York, New York
*Counsel for Plaintiffs*

Louis F. Chisari
William Kevin Joseph
Marcote & Associates, P.C.
Hicksville, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs Isidro Garcia, Eliazar Valentin, and Fermin Quiche bring this action seeking unpaid minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq*., and the New York Labor Law ("NYLL" or "N.Y. Lab. L."), Art. 6 § 190, *et. seq*., and Art. 19, § 650, *et seq.* Plaintiffs also seek damages for failure to provide adequate annual wage notices and weekly wage statements under the NYLL, as well as unpaid spread of hours wages and unreimbursed equipment costs.

Before me is the motion for summary judgment filed by Defendants Saigon Market LLC d/b/a Saigon Market ("Saigon Market"), Hau Nguyen, and Johnathan Nguyen, as well as Plaintiffs' cross-motion for partial summary judgment. Because I find that there is no genuine dispute of material fact concerning Defendants' failure to provide Plaintiffs with adequate annual wage notices and weekly wage statements in accordance with the terms of N.Y. Lab. L. §§ 195(1) and 195(3), or Defendants' failure to provide adequate notice of their intent to claim a tip credit under both the FLSA and the NYLL, Plaintiffs' motion for summary judgment on their annual wage notice and wage statement claims, minimum wage claims, and overtime claims is granted. However, I find that Defendants are entitled to summary judgment on Plaintiffs' spread of hours and equipment cost claims. Finally, I find that Plaintiffs are entitled to liquidated damages on their claims for unpaid wages, but that Plaintiffs fail as a matter of law to demonstrate that Defendants' violations of the applicable labor laws were willful. Thus, for the reasons that follow, the motions of the parties are GRANTED IN PART and DENIED IN PART.

## I.   <u>Background</u>[1]

Defendant Saigon Market is a Manhattan restaurant specializing in Vietnamese cuisine. (Defs.' 56.1 ¶ 1.)[2]  Defendant Hau Nguyen ("Ms. Nguyen") is an owner of Saigon Market and Defendant Johnathan Nguyen is a part owner of Saigon Market.  (*Id.* ¶¶ 2–3.)

Plaintiff Isidro Garcia was employed by Defendants from approximately May 2011 until August 26, 2015.  (Pls.' 56.1 ¶ 29.)[3]  Beginning in October 2013 and until August 26, 2015, Garcia worked for Defendants as a delivery worker.  (*Id.* ¶ 30.)[4]  Plaintiff Eliazar Valentin was employed by Defendants from approximately January 20, 2014 until June 9, 2014, (Defs.' 56.1 Counterstatement ¶ 5),[5] while Plaintiff Fermin Quiche was employed by Defendants from approximately December 24, 2014 until December 25, 2015, (*id.* ¶ 8).[6]  Like Garcia, both

---

[1] The facts stated in this section are drawn principally from the parties' statements of undisputed facts pursuant to Local Civil Rule 56.1.  (*See* Docs. 92, 93.)  All facts are undisputed unless otherwise noted.

[2] "Defs.' 56.1" refers to Defendants' Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment, dated November 5, 2018.  (Doc. 92.)  Many of the documents filed by both parties in support of their respective summary judgment motions were refiled due to filing errors in the parties' original submissions.  The filing dates referenced herein correspond with the dates on which those documents were originally submitted.

[3] "Pls.' 56.1" refers to Plaintiffs' Rule 56.1 Responses and Counter-Statement, dated December 5, 2018.  (Doc. 93.) I note that Plaintiffs failed to support many of the statements in their Rule 56.1 submission with citations to record evidence, as required by Local Rule 56.1(d).  *See* L.R. 56.1(d) ("Each statement by the movant or opponent [in a Rule 56.1 statement of material facts], including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible [at trial].").  However, where Defendants have agreed that Plaintiffs' assertions are undisputed, I accept them as such.  I also find that these undisputed facts are supported by other evidence in the record.  *See Severino v. 436 W. L.L.C.*, No. 13-CV-3096 (VSB), 2015 WL 12559893, at *3 (S.D.N.Y. Mar. 19, 2015) (overlooking defendants' "utter failure to comply with Local Rule 56.1 and undert[aking] an independent review of the record to marshal the evidence supporting Defendants' assertions").

[4] Plaintiffs state in their Complaint that, prior to October 2013, Garcia worked for Defendants as a busboy and "was properly compensated for his hours worked."  (Compl. ¶¶ 40, 46.)  ("Compl." refers to Plaintiffs' Second Amended Complaint, filed October 24, 2017.  (Doc. 47.).)  Thus, Garcia only challenges his compensation during the time he was employed as a delivery worker.

[5] "Defs.' 56.1 Counterstatement" refers to Defendants['] Counter-Statement of Undisputed Facts, dated January 22, 2019.  (Doc. 95.)

[6] The parties dispute Valentin's and Quiche's dates of employment:  Plaintiffs assert that Valentin was employed by Defendants from January 10, 2014 until June 2014, (Pls.' 56.1 ¶ 46), while Defendants respond that Valentin was employed from January 20, 2014 until June 9, 2014, (Defs.' 56.1 Counterstatement ¶ 5).  Plaintiffs assert that Quiche was employed from May 2014 until December 25, 2015, (Pls.' 56.1 ¶ 58), while Defendants respond that Quiche was employed from December 24, 2014 until December 25, 2015, (Defs.' 56.1 Counterstatement ¶ 8). Defendants submitted both payroll records and an affidavit to corroborate Valentin's and Quiche's dates of employment, (*see* Joseph Decl. Ex. C (affidavit of Hau Nguyen); *id.* Ex. J (Valentin payroll records); *id.* Ex. K

Valentin and Quiche were employed as delivery workers.  (Pls.' 56.1 ¶¶ 47, 59.)  Plaintiffs were required to possess a bicycle to make their deliveries.  (Pls.' 56.1 ¶¶ 43, 55, 66.)

During Plaintiffs' employment as delivery workers, Defendants kept track of the tips Plaintiffs earned and permitted Plaintiffs to keep those tips.  (Defs.' 56.1 ¶¶ 7, 15, 23; Joseph Decl. Exs. G–K.)  In addition, Defendants paid Plaintiffs an hourly wage of $5.00.  (Pls.' 56.1 ¶¶ 31, 48, 60.)  Because Plaintiffs received tips, Defendants deducted a "tip credit" from the statutory minimum wage to calculate Plaintiffs' $5.00 hourly wage.  (*See* Defs.' Br. 6.)[7]  When Plaintiffs worked more than forty hours per week, they were paid at a rate of $9.00 per hour, plus tips.  (Pls.' 56.1 ¶¶ 39, 49, 61.)  On an annual basis, Defendants provided Plaintiffs with a "Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law" form, which listed Plaintiffs' regular and overtime pay rates.  (Joseph Decl. Exs. D–F.)  However, these notices indicated that Defendants did not take any allowances with respect to Plaintiffs' wage calculations, including any allowance for "tips."  (*Id.*)  In addition, Plaintiffs' paystubs—which listed their hourly wage ($5.00), the number of "basic" and overtime hours worked, and the amount of tips earned—did not reference any tip credit taken by Defendants against Plaintiffs' hourly wage.  (Pls.' 56.1 ¶¶ 42, 54, 65; *see also* Joseph Decl. Exs. G–K.)

---

(Quiche payroll records)), whereas Plaintiffs merely cited to the allegations in their Complaint, (*see* Pls.' 56.1 ¶¶ 46, 58).  ("Joseph Decl." or "Joseph Declaration" refers to the Declaration of William K. Joseph, dated November 5, 2018.  (Doc. 90).)  Because only Defendants offer any admissible evidence to corroborate Valentin's and Quiche's dates of employment—and because I did not identify any record evidence supporting Plaintiffs' contrary assertions—I accept the dates of employment set forth in Defendants' 56.1 statement.

[7] "Defs Br." refers to Defendants Saigon Market LLC (d/b/a Saigon Market), Hau Nguyen and Johnathan Nguyen's Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56, dated November 5, 2018.  (Doc. 91.)

## II.      **Procedural History**

Plaintiffs Garcia and Valentin initiated this putative collective action by filing a

complaint on December 1, 2015 against Saigon Grill, Inc. (d/b/a Saigon Market), Simon Nget,

and Chris Pizzimenti.  (Doc. 1.)  On March 8, 2016, Garcia and Valentin filed an amended

complaint with leave of Court, (Doc. 17), which substituted Saigon Market, Hau Nguyen, and

Johnathan Nguyen in place of the originally named defendants, (Doc. 18).  On October 24, 2017,

Garcia and Valentin amended their complaint a second time, adding Fermin Quiche as a plaintiff.

(Doc. 47.)  Plaintiffs' second amended complaint (referred to herein as the "Complaint") alleges

eight claims against Defendants, including claims for (1) violations of the minimum wage and

overtime provisions of both the FLSA, 29 U.S.C. §§ 206(a), 207(a), and the NYLL, N.Y. Lab. L.

§ 652(1), N.Y. Comp. Codes R. & Regs. tit 12 ("12 N.Y.C.R.R.") § 146–1.4; (2) violations of

the New York regulations governing spread of hours compensation, 12 N.Y.C.R.R. § 146–1.6;

(3) failure to provide adequate annual wage notices and weekly wage statements pursuant to

N.Y. Lab. L. § 195; and (4) failure to reimburse Plaintiffs for the costs of "tools of the trade"

required to perform their jobs, in violation of 29 C.F.R. § 531.35 and 12 N.Y.C.R.R. § 146–

2.7(c).

Defendants filed their motion for summary judgment on November 5, 2018, seeking

summary judgment on all claims.  (Doc. 78.)  In support of their motion, Defendants filed a

Local Rule 56.1 statement of undisputed facts, (Doc. 92); a memorandum of law, (Doc. 91); and

the Joseph Declaration, with exhibits, (Doc. 90).  On December 5, 2018, Plaintiffs filed their

opposition to Defendants' motion, along with a cross-motion for partial summary judgment on

all claims except Plaintiffs' spread of hours and equipment cost claims.  (Doc. 83.)  In support of

their opposition and cross-motion, Plaintiffs submitted a Local Rule 56.1 response and

counterstatement to Defendants' statement of undisputed facts, (Doc. 93); a memorandum of law, (Doc. 86); and a declaration, with exhibits, (Doc. 84).  On January 22, 2019, Defendants filed a Local Rule 56.1(b) counterstatement of undisputed facts in response to Plaintiffs' statement of undisputed facts, (Doc. 95); along with a reply in further support of their motion for summary judgment and in opposition to Plaintiffs' motion, (Doc. 94); and a declaration, with exhibits, (Doc. 96).  Plaintiffs submitted their reply on February 5, 2019.  (Doc. 97.)

### III.   <u>Legal Standards</u>

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party."  *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment . . . ."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000)).  "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  *Id.* (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

IV.   **Discussion**

Plaintiffs have alleged claims for Defendants' failure to provide adequate annual wage notices to all Plaintiffs and to provide Plaintiff Garcia with adequate weekly wage statements under New York law; violations of the minimum wage and overtime provisions of both the FLSA and the NYLL; violations of the New York regulations governing spread of hours compensation; and failure to reimburse Plaintiffs for certain equipment costs.  Defendants have moved for summary judgment on all of Plaintiffs' claims, while Plaintiffs have cross-moved for summary judgment on all claims, with the exception of their spread of hours[8] and equipment cost claims.  I address each of Plaintiffs' claims in turn below.

A.   *NYLL Notice and Wage Statement Claims*

Both Plaintiffs and Defendants move for summary judgment with respect to Plaintiffs' claims that Defendants failed to comply with the requirements of New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL, effective April 9, 2011.  *See* 2010 N.Y. Sess. Laws ch. 564 (McKinney).  Pursuant to the WTPA, employers must provide employees with wage notices at the time of hiring which set forth information regarding the employees' rates of pay, including those "allowances, if any, claimed as part of the minimum wage."  N.Y. Lab. L. § 195(1)(a).  The WTPA also requires employers to provide their employees a "statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Canelas v. A'Mangiare, Inc.*, No. 13 CV 3630 (VB), 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015) (internal quotation

---

[8] Plaintiffs appear to have abandoned their spread of hours claims.  Defendants presented arguments in support of their motion for summary judgment on those claims in their opening brief, (Defs.' Br. 8–9), but Plaintiffs did not address Defendants' arguments in their briefing, and even specified that Defendants' motion for summary judgment "should be denied except the spread of hours claims," (Pls.' Br. 14).  ("Pls.' Br." refers to the Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross Motion for Summary Judgment, dated December 5, 2018.  (Doc. 86.).)

marks omitted) (citing N.Y. Lab. L. § 195(3)).  Plaintiffs allege that Defendants violated § 195(1) with respect to all Plaintiffs and failed to provide Plaintiff Garcia adequate weekly wage statements in accordance with the terms of § 195(3).  It is evident from the record that Defendants provided Plaintiffs with inadequate wage notices and wage statements; therefore, Plaintiffs' motion for summary judgment on these claims is granted and Defendants' motion is denied.

### 1.  Applicable Law

The version of N.Y. Lab. L. § 195(1)(a) in effect when Defendants first hired Plaintiffs provides:

> Every employer shall . . . provide his or her employees . . . at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; *allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances*; the regular pay day designated by the employer . . . ; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary. . . .  For all employees who are not exempt from overtime compensation . . . , the notice must state the regular hourly rate and overtime rate of pay . . . .

N.Y. Lab. L. § 195(1)(a) (2013) (emphasis added).[9]  Section 195(3) further requires that every employee be provided with a statement containing similar information, including "allowances, if any, claimed as part of the minimum wage," with each payment of wages.  N.Y. Lab. L. § 195(3).

---

[9] Section 195(1)(a) was amended on December 29, 2014, effective February 27, 2015 (the "2014 Amendment"), to eliminate the requirement that an employee be provided with such notice "on or before February first of each subsequent year of the employee's employment with the employer."  *See* 2014 N.Y. Sess. Laws ch. 537, § 1. Although both Garcia's and Quiche's employment extended beyond February 27, 2015, all of the challenged annual wage notices were issued prior to that date.  (*See* Joseph Decl. Ex. D (January 22, 2013, January 9, 2014, and January 1, 2015 Garcia notices); *id.* Ex. F (January 1, 2015 Quiche notice).)

Under the version of the WTPA in effect until February 27, 2015, an employee not provided with an annual wage notice in compliance with the terms of § 195(1)(a) could recover damages of $50 for each week that the violations occurred or continued to occur, not to exceed a total of $2,500, plus reasonable costs and attorney's fees.  *See* N.Y. Lab. L. § 198(1-b) (2013).  On December 29, 2014, effective February 27, 2015, these statutory damages were increased from $50 per week to $50 per workday, and the overall cap was increased from $2,500 to $5,000.  *See* 2014 N.Y. Sess. Laws ch. 537, § 2.  An employee not provided with wage statements in compliance with the terms of § 195(3) could recover damages of $100 for each week that the violations occurred or continued to occur, not to exceed a total of $2,500, plus reasonable costs and attorney's fees.  *Id.* § 198(1-d).  On December 29, 2014, effective February 27, 2015, these statutory damages were increased from $100 per week to $250 per workday, and the cap was increased from $2,500 to $5,000.  *See* 2014 N.Y. Sess. Laws ch. 537, § 2.

### 2.  Application

I first consider the parties' arguments regarding Plaintiffs' claims for damages under § 198(1-b) due to Defendants' alleged violations of § 195(1), and then address Plaintiff Garcia's claim for damages under §198(1-d) due to Defendants' violations of § 195(3).

### a.   Violation of N.Y. Lab. L. § 195(1)

Plaintiffs claim that they did not receive annual wage notices compliant with the terms of N.Y. Lab. L. § 195(1), and that they are therefore entitled to the damages set forth in § 198(1-b).  (Pls.' Br. 9–10.)   In response, Defendants cite the annual notices that they provided all three Plaintiffs.  (*See* Defs.' Br. 9–10; Joseph Decl. Exs. D–F.)  Defendants miss the point.  Plaintiffs do not dispute that they received annual notices from Defendants; rather, they contend that those notices were deficient in several respects.  There can be no dispute that the annual notices did not

list the allowances that Defendants admittedly took in the form of a tip credit.  (*See* Defs.' Br. 6

(explaining that Defendants calculated Plaintiffs' hourly wage by deducting a tip credit from the

statutory minimum wage).)  Instead, on each notice Defendants produced, Defendants either

checked "none" next to the question of whether any allowances had been taken, or left that

section of the notice entirely blank.  (*See* Joseph Decl. Exs. D–F.)  In no instance did Defendants

check the box indicating that they would be taking a credit for "tips."  (*Id.*)  This omission is a

clear violation of § 195(1), which requires the annual wage notice to identify the "allowances, if

any, claimed as part of the minimum wage, including tip, meal, or lodging allowances."  N.Y.

Lab. L. § 195(1)(a).  In their reply papers, Defendants appear to concede that their notices did

not comply with § 195(1); instead, they invoke § 198(1-b), which provides that "complete and

timely payment of all wages due" shall operate as an affirmative defense to a § 195(1)(a) claim.

(*See* Defs.' Reply 7–8.)[10]  Here again, Defendants' argument misses the mark because "that

defense was not available [] before February 27, 2015," as this change was part of the 2014

Amendment.  *See Dudley v. Hanzon Homecare Servs., Inc.*, No. 15-CV-8821 (JMF), 2018 WL

481884, at *4 (S.D.N.Y. Jan. 17, 2018).

In any event, Plaintiffs correctly argue that Defendants did not make "complete and

timely payment of all wages due," either before or after February 2015.  It is undisputed that,

throughout the relevant time period, Defendants paid Plaintiffs $5.00 per hour after deducting the

tip credit.  (Pls.' 56.1 ¶¶ 31, 48, 60.)  However, while a New York employer could have paid a

wage as low as $5.00 per hour to a "food service worker," the minimum hourly rate for Plaintiffs

during the relevant time period was $5.65.  *See Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310

---

[10] "Defs.' Reply" refers to Defendants Saigon Market, LLC (d/b/a Saigon Market), Hau Nguyen and Johnathan Nguyen's Reply Memorandum of Law in Further Support of Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 and in Opposition to Plaintiff's Motion for Partial Summary Judgment, dated January 22, 2019.  (Doc. 94.)

F.R.D. 106, 113 (S.D.N.Y. 2015) ("In New York, an employer can claim a tip credit for restaurant workers and thus pay a cash wage as low as $5.00 per hour to a 'food service worker' or $5.65 to a 'service worker' . . . ." (citing 12 N.Y.C.R.R. § 146–1.3)).  The parties agree that during the relevant time period, all Plaintiffs were employed as delivery workers, (Pls.' 56.1 ¶¶ 30, 47, 59); delivery workers, in turn, are expressly excluded from the definition of "food service workers."  *See* 12 N.Y.C.R.R. § 146-3.4(a) ("The term food service worker shall not include delivery workers.").  Delivery workers such as Plaintiffs are instead classified as "service employees" for whom the minimum hourly wage after the deduction of a tip credit was $5.65 during the relevant time period.  *See id.* § 146–3.3 ("A service employee is an employee, other than a food service worker or fast food employee, who customarily receives tips . . . .");[11] *Bittencourt*, 310 F.R.D. at 113 (explaining that "[s]ervice employees 'shall receive a wage of at least $5.65 per hour . . . provided that the total of tips received plus wages equals or exceeds [the applicable hourly minimum wage]'" (quoting 12 N.Y.C.R.R § 146–1.3(a))).  Accordingly, given that Plaintiffs' minimum hourly rate throughout the relevant time period should have been $5.65 rather than $5.00, I find that Defendants cannot invoke the affirmative defense of "complete and timely payment," N.Y. Lab. L. § 198(1-b), and that Plaintiffs are therefore entitled to summary judgment on their § 195(1) claims.

As explained above, *see supra* Part I, I find that Plaintiff Garcia was employed by Defendants as a delivery worker from October 2013 until August 26, 2015; that Valentin was employed from January 20, 2014 until June 9, 2014; and that Quiche was employed from

---

[11] Plaintiffs also do not qualify as "fast food employees" because that term applies only to individuals employed by a "Fast Food Establishment," which, in turn, is defined as an "establishment in the state of New York . . . which is one of 30 or more establishments nationally."  12 N.Y.C.R.R. § 146–3.13(a), (b).  There is no indication in either of the parties' papers that Defendants' restaurant is part of a larger chain; thus, I find that Plaintiffs were not employed at a "Fast Food Establishment."

December 24, 2014 until December 25, 2015.[12]  At the time of the alleged violations—all of

which predate February 27, 2015, (*see* Joseph Decl. Exs. D–F)—employees were entitled to $50

for each week that the violations occurred or continued to occur, not to exceed a total of $2,500.

*See* N.Y. Lab. L. § 198(1-b) (2013).  Accordingly, that $2,500 cap is reached after 50 weeks

($2,500 / $50 per week = 50 weeks).  Because Defendants employed both Garcia and Quiche as

delivery workers for over a year, and because I find there is no dispute of material fact regarding

Defendants' failure to supply them with the appropriate annual wage notices during that time,

they are entitled to summary judgment in the amount of $2,500 each, plus reasonable costs and

attorney's fees.  Valentin is entitled to $50 for each of the 20 weeks during which he was

employed (January 20, 2014 through June 9, 2014), or $1,000 ($50 x 20 weeks = $1,000).

### b.  Violation of N.Y. Lab. L. § 195(3)

Plaintiff Garcia also argues that he is entitled to summary judgment on his claim under

N.Y. Lab. L. §195(3) as there is no dispute that Defendants failed to provide him with compliant

wage statements between October 2013 and August 2015.  (Pls.' Br. 10–11.)  Section 195(3)

mandates that each employee be provided with a wage statement "with every payment of wages"

that includes "allowances, if any, claimed as part of the minimum wage."  N.Y. Lab. L. § 195(3).

Here, Defendants repeat the same arguments they made concerning §195(1).  A review of

Garcia's wage statements confirms that they do not reference any allowances for tips, (*see*

---

[12] Neither Garcia nor Quiche argue for retroactive application of the 2014 Amendment to § 198(1-b), which took effect on February 27, 2015 and which provides for damages in the amount of $50 per workday, up to a maximum of $5,000.00.  *See* N.Y. Lab. L. § 198(1-b) (effective Feb. 27, 2015).  New York courts disfavor retroactive operation of statutes and require a clear expression of legislative intent to justify retroactivity.  *See Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013).  The text of the 2014 Amendment makes no reference to retroactivity, and I have not discerned any such intent in the legislative history.  *See, e.g.*, N.Y. Bill Jacket, A.B. 8106-C, ch. 537.  I therefore conclude that the 2014 Amendment should not be given retroactive effect.  *See Martinez v. Alimentos Saludables Corp.*, No. 16 CV 1997 (DLI)(CLP), 2017 WL 5033650, at *21 (E.D.N.Y. Sept. 22, 2017) (declining to retroactively apply the 2014 Amendment to § 198(1-b) where plaintiff's employment began prior to February 27, 2015 but ended after that date).

Joseph Decl. Exs. G–I), and—for the reasons explained above, *see supra* Part IV.A.2.a—I find that Defendants cannot rely on the affirmative defense of "complete and timely payment of all wages due," N.Y. Lab. L. § 198(1-b), because Garcia was paid $5.00 per hour instead of the required $5.65.  Thus, I find that there is no disputed issue of material fact concerning Defendants' failure to provide Garcia with compliant weekly wage statements.  Because Garcia worked for more than 20 workdays after February 27, 2015 and because Defendants continued to provide him with noncompliant wage statements during that time, he is entitled to the maximum award of $5,000 for Defendants' violations of § 195(3).  *Cf. Martinez*, 2017 WL 5033650, at *21 (recommending award of $5,000 to plaintiff hired in 2002 who "worked more than 20 work days after February 27, 2015" because, "[f]rom February 27, 2015 onward, an employee could recover $250 for each work day that the employer was in violation of Section 195(3), up to a statutory maximum of $5,000.00" (citing N.Y. Lab. L. § 198(1-d) (effective Feb. 27, 2015))).

### B.   *Minimum Wage and Overtime Claims*

Both parties also seek summary judgment with respect to Plaintiffs' claims that Defendants failed to pay them the required minimum and overtime hourly rates established by the FLSA and the NYLL.  These claims rest entirely on whether Defendants were entitled to claim a tip credit, thereby reducing the hourly wage which Plaintiffs were owed.  Because I find that Defendants failed to provide adequate notice of their intent to claim a tip credit under either statute, Plaintiffs' motion for summary judgment with respect to their minimum wage and overtime claims under both the FLSA and the NYLL is granted; Defendants' motion for summary judgment on those claims is denied.

### 1.  Applicable Law

"Both the FLSA and the NYLL permit an employer to pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017) (citation omitted), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).  This allowance is referred to as a "tip credit."  *See id.*

To avail itself of the FLSA's tip credit, an employer must comply with two additional statutory requirements.  "The FLSA provides that the tip credit 'shall not apply with respect to any tipped employee unless [1] such employee has been informed by the employer of the [statute's tip credit] provisions, and [2] all tips received by such employee have been retained by the employee.'"  *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *23 (S.D.N.Y. June 9, 2016) (quoting 29 U.S.C. § 203(m)).  This first requirement—the "notice provision"—"is strictly construed and normally requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit."  *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (quoting *Perez* v. *Lorraine Enters., Inc.*, 769 F.3d 23, 27 (1st Cir. 2014)).  "The employer bears the burden of showing that it satisfied the notice requirement 'by, for example, providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit against the minimum wage as permitted by law.'"  *Cucu* v. *861 Rest. Inc.*, No. 14-cv-1235 (JGK), 2017 WL 2389694, at *3 (S.D.N.Y. June 1, 2017) (quoting *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F.Supp.2d 253, 288 (S.D.N.Y. 2011)); *see also Inclan*, 95 F. Supp. 3d at 497.  However, "[t]he FLSA's notice provision does not require that the notice be given in writing."  *Jrpac*, 2016 WL 3248493, at *23.  "If the employer cannot show that it has informed employees that tips are being credited against

15

their wages, then no tip credit can be taken and the employer is liable for the full minimum wage . . . ." *Inclan*, 95 F. Supp. 3d at 497 (citation omitted); *see also Copantitla*, 788 F. Supp. 2d at 288 (restaurant not entitled to take tip credit despite "informing employees that they would receive an hourly rate plus tips" and "posting notices about the minimum wage laws," because restaurant did not "t[ell] its employees that it intended to use tips to satisfy its minimum wage obligations").

The NYLL also permits an employer to take a tip credit for tipped employees, "subject to certain conditions similar to those under the FLSA." *Jrpac*, 2016 WL 3248493, at *25; *see also* 12 N.Y.C.R.R. § 146–1.3 ("An employer may take a credit towards the basic minimum hourly rate if a service employee or food service worker receives enough tips and if the employee has been notified of the tip credit[.]"). However, "[a]lthough the 'tip credit' requirements under the NYLL are similar to those under the FLSA, they are not identical." *Velez v. 111 Atlas Rest. Corp.*, No. 14 CV 6956 (MKB)(CLP), 2016 WL 9307471, at *9 (E.D.N.Y. Aug. 11, 2016). Most importantly, notice of the tip credit under the NYLL "must be written." *Gamero*, 272 F. Supp. 3d at 501 (quoting *Jrpac*, 2016 WL 3248493, at *25). Specifically, the NYLL requires that "[p]rior to the start of employment, an employer shall give each employee written notice of . . . the amount of tip credit, if any, to be taken from the basic minimum hourly rate . . . . The notice shall also state that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." 12 N.Y.C.R.R. § 146–2.2(a). This notice must be written in both English and "any other language spoken by the new employee as his/her primary language." *Id.* § 146–2.2(a)(1), (2). Once an employer has provided written notice of this tip credit, the employer must obtain "acknowledgement of receipt signed by the employee." *Id.* § 146–2.2(c). "The burden is on the employer to show that it has complied with the NYLL's tip

notice requirement." *Gamero*, 272 F. Supp. 3d at 501 (citation omitted). "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Salustio v. 106 Columbia Deli Corp.*, 264 F. Supp. 3d 540, 554 (S.D.N.Y. 2017).

Both the FLSA and regulations issued pursuant to the NYLL require an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty hours per work week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146–1.4. Where a valid tip credit has been taken, "the minimum overtime cash wage is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one-half, minus the tip credit." *Inclan*, 95 F. Supp. 3d at 498 (citing *Copantitla*, 788 F. Supp. 2d at 291–92; 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.60, 778.5; 12 N.Y.C.R.R. § 146–1.4). An employer who fails to comply with the applicable notice requirements under the FLSA and/or the NYLL may not claim a tip credit to satisfy either its minimum wage or its overtime obligations. *See Jrpac*, 2016 WL 3248493, at *25 (barring defendant from "utiliz[ing] a tip credit so as to reduce the minimum wage and overtime wages it was obligated to pay its delivery workers" under both the FLSA and the NYLL); *Inclan*, 95 F. Supp. 3d at 498–500 (finding that defendant could "not assert the benefit of a tip credit allowance" for either its minimum wage or overtime wage calculations under either statute).

### 2.  Application

Defendants acknowledge that they did not pay Plaintiffs the full statutory minimum or overtime wage. In fact, all parties agree that throughout the relevant time period, Defendants paid Plaintiffs a regular hourly wage of $5.00 per hour, plus tips. (Pls.' 56.1 ¶¶ 31, 48, 60.) It is also undisputed that Defendants claimed a tip credit when calculating Plaintiffs' overtime rate.

(*See* Pls.' 56.1 ¶¶ 39, 49, 61 (noting that Plaintiffs' overtime rate was $9.00 per hour); Defs.' Br. 7 (describing Defendants' overtime calculations).)  Defendants argue that they were entitled to pay Plaintiffs a reduced hourly wage because they provided the requisite notice under the FLSA and the NYLL of their intention to take a tip credit, in the form of tip reporting sheets and an informational poster located in the kitchen area of the restaurant.  (Defs.' Br. 5–6.)  Plaintiffs respond that any notice that Defendants purported to provide was inadequate as a matter of law. (Pls.' Br. 2–5.)[13]  I find that Defendants have not carried their burden of demonstrating compliance with either the FLSA's or the NYLL's notice requirements and that Plaintiffs are therefore entitled to summary judgment on their minimum wage and overtime claims under both statutes.

Turning first to the notice requirements under the FLSA, it is evident that Defendants failed to provide Plaintiffs with written notice of their intention to take a tip credit, which, at a minimum, must include an explanation that "tips are being credited against the [employees'] wages."  *Inclan*, 95 F. Supp. 3d at 497 (quoting *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994)).  As discussed above, *see supra* Part IV.A.2.a, not only do the annual wage notices that Defendants provided to Plaintiffs fail to indicate that Defendants were claiming a tip credit, but the notices affirmatively convey incorrect information—i.e., that Defendants were claiming no allowances whatsoever in calculating Plaintiffs' hourly wage.  (*See* Joseph Decl. Exs. D–F.) Similarly, the tip reporting sheets that Defendants provided to Plaintiffs do not clearly convey that Defendants were crediting tips against Plaintiffs' minimum or overtime wages.  Rather, these sheets list each Plaintiff's "Hr. Rate" ($5.00), as well as the number of hours worked

---

[13] Plaintiffs do not argue that Defendants failed to permit Plaintiffs to retain the tips they received; thus, the only relevant inquiry with regard to Plaintiffs' minimum wage and overtime claims is whether Defendants provided adequate notice of their intent to claim a tip credit.  *See Jrpac*, 2016 WL 3248493, at *23.

("Basic Hrs" and "OT Hrs") and the total "Tips" Plaintiffs earned during the pay period.  (*See* Joseph Decl. Exs. G–K.)  However, these notices do not indicate that there is any relationship between Plaintiffs' tips and their hourly wage—that is, there is no suggestion that Plaintiffs' hourly wage was reduced because Defendants were taking a tip credit against that wage.  *See Velez*, 2016 WL 9307471, at *7–8 (finding that "tip sign off sheets" containing "the hourly rate of pay, the dollar amount of tips received during any pay period, the amount of overtime worked and the amount of hours worked" did not provide adequate notice under FLSA because, "[w]hile the sheets state[d] the amount of tips received, they d[id] not inform the employee of the amount taken by the employer as a tip credit").

Defendants also rely on an assertion by Ms. Nguyen in an affidavit submitted in support of Defendants' motion for summary judgment that "notice was [] posted in the restaurant in the form of a poster in the kitchen area advising all employees of the minimum wage requirements and tip credits, as formulated by New York State Labor Law."  (Joseph Decl. Ex. C ¶ 11.) However, "[s]elf-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment."  *Aersale Inc. v. Ibrahim*, No. 13 Civ. 713(KBF), 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013).  Defendants have failed to produce a copy or photograph of this poster, or any specific details regarding the time period during which the notice was posted or where precisely it was displayed.  Ms. Nguyen's statement, which "do[es] not provide any information as to what the poster[] said, apart from a verbatim recitation of [the statutory] requirements," is thus insufficient, without more, to create a triable issue of fact.  *Velez*, 2016 WL 9307471, at *8.  "Courts have consistently held that a posting in the workplace is insufficient to satisfy the tip credit notice requirement, particularly where there is no testimony or photograph to demonstrate the poster's content or source."  *Id.*;

*see also Copantitla*, 788 F. Supp. 2d at 289–90 (granting summary judgment on plaintiffs' FLSA minimum wage claims where witnesses testified that "a government poster that talk[ed] about minimum wage" was posted across from the employee locker room (internal quotation marks omitted)); *He v. Home on 8th Corp.*, No. 09 Civ. 5630(GBD), 2014 WL 3974670, at *5 (S.D.N.Y. Aug. 13, 2014) ("Defendant's failure to produce any poster that he claims he hung before this lawsuit was filed weighs in Plaintiffs' favor, especially because someone being sued for failing to comply with federal and state minimum wage laws likely would have a strong incentive to preserve all documents relating to his compliance with such laws.").

Defendants also have not introduced evidence in the form of witness testimony sufficient to create a triable issue of fact. Defendants did not depose Plaintiffs in this litigation and thus did not build a record regarding Plaintiffs' understanding of precisely how Defendants calculated their wages. Furthermore, although Ms. Nguyen testified that she informed Plaintiffs that their pay would be "[m]inimum wage, plus whatever tips you make," (Nguyen Tr. 82:6-14),[14] this testimony is also insufficient since it does not indicate that Defendants satisfied "the standard for the notice obligation articulated by the Courts of Appeals, which have uniformly 'require[d] at the very least notice to employees of the employer's intention to treat tips as satisfying part of the employer's minimum wage obligations.'" *Copantitla.*, 788 F. Supp. 2d at 289–90 (quoting *Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1322 (1st Cir. 1992)).

In sum, given the "strictly construed" nature of the FLSA's notice requirement, I find that the minimal, conclusory evidence that Defendants have put forth regarding the notice they provided of their intent to take a tip credit "is insufficient to create a triable issue of fact as to

---

[14] "Nguyen Tr." refers to the transcript of the May 18, 2018 deposition of Hau Nguyen, attached as Exhibit B to the Joseph Declaration. (Docs. 90–2, 90–3.)

whether the notice requirement has been satisfied, as it compels only the conclusion that the tipped employees knew they were tipped and that minimum wage obligations exist." *Id.*

Because the applicable NYLL requirements—which mandate notice in writing, *see* 12 N.Y.C.R.R. § 146–2.2(a)—are more stringent than the FLSA's tip credit notice requirements, I find that Defendants have also failed to comply with the NYLL.  Defendants rely heavily on *Carvente-Avila v. Chaya Mushkah Restaurant Corp.* to argue that, under the NYLL, "a food service employer is eligible to claim the tip credit even when they fail to provide written notice of the tip credit rules[,] provided that the employer can demonstrate compliance with all of the other minimum wage requirements and that their employees understood the manner in which the employer took the tip credit."  No. 12-CV-5359 (KBF), 2016 WL 3221141, at *1–2 (S.D.N.Y. Mar. 1, 2016) (quoting a March 4, 2015 opinion letter issued by the general counsel of the New York Department of Labor and concluding that the letter was "entitled to deference").  Yet even under the terms of *Carvente-Avila*—which, in any event, represents the minority view among courts in this district and contradicts the plain language of the regulations, *see* 12 N.Y.C.R.R. § 146–2.2 (requiring employers to provide "written notice of pay rates, tip credit and pay day")—Defendants do not demonstrate that they properly claimed a tip credit here.  First, as explained above, *see supra* Part IV.A.2.a, Defendants did not comply "with all of the other minimum wage requirements," *Carvente-Avila*, 2016 WL 3221141, at *1, as they paid Plaintiffs at an hourly rate below the statutory minimum rate for "service employees" ($5.00 as opposed to $5.65).  Furthermore, as previously addressed, there is no evidence suggesting that Plaintiffs "understood the manner in which [Defendants] took the tip credit."  *Id.*  Defendants have not identified any evidence in the record indicating (1) that Plaintiffs were explicitly informed of Defendants' intent to treat tips as satisfying part of their minimum wage obligation, (2) that

Plaintiffs understood that their mandated hourly rate was reduced because of the tips they received, or (3) that Plaintiffs were provided with sufficient information from which they could have inferred the manner in which Defendants calculated the tip credit.

Because I conclude that no reasonable jury could find that Defendants satisfied either the FLSA's or the NYLL's notice requirements, I find that Defendants are not entitled to claim a tip credit against Plaintiffs' minimum or overtime wages. However, because Plaintiffs have not attempted to calculate the precise amount of damages on their minimum wage or overtime claims, I grant summary judgment as to liability only and reserve any rulings concerning damages for further proceedings. *See Severino*, 2015 WL 12559893, at *10.

## C.   *Equipment Costs*

Defendants move for summary judgment with respect to Plaintiffs' claims for reimbursement of equipment costs. (Defs.' Br. 10–11; Pls.' Br. 11–12.) Pursuant to the relevant regulations, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." 29 C.F.R. § 531.35; *see also* 12 N.Y.C.R.R. § 146–2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."). Defendants acknowledge that Plaintiffs were required to provide their own bicycles in order to make deliveries, (*see* Pls.' 56.1 ¶¶ 43, 55, 66);[15] however, Plaintiffs have identified, and I have found,

---

[15] During her deposition Ms. Nguyen testified that Defendants provided Plaintiffs with all other necessary equipment, including uniforms, safety vests, lights, and bells. (*See* Nguyen Tr. 78:14-79:2.) Plaintiffs ignore Ms. Nguyen's testimony and introduce no evidence to contradict it.

no evidence whatsoever of their alleged unreimbursed equipment expenses—either in the form

of receipts, declarations, or other documentation—let alone any evidence that any such expenses

were incurred after their date of hire or were related to the use of their bicycles for professional,

rather than personal purposes.  *See Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258

(S.D.N.Y. 2008) (taking "into account the costs that plaintiffs incurred in purchasing bicycles

after they were hired and in repairing them during their employment" where plaintiffs "testified

that they used the bicycles primarily for their work" (citing 29 C.F.R. § 531.3(d)(1))).

Instead, Plaintiffs rely solely on the allegations in their Complaint.  (*See* Pls.' Br. 11 n.10

("Plaintiffs['] complaint alleging tools of the trade violations creates an issue of material fact.").)

However, it is well established that a party "cannot defeat a motion for summary judgment by

simply relying on the allegations of his complaint." *Belpasso v. Port Auth. of N.Y. & N.J.*, 400 F.

App'x 600, 601 (2d Cir. 2010) (summary order).  The Supreme Court has explained that "the

plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986).  This is so even where the party moving for summary judgment does

not "support its motion with affidavits or other similar materials *negating* the opponent's claim,"

but instead points only to an absence of evidence in support of the non-moving party's claim, *id.*

at 323—here, the failure to allege facts that support each element of a claim.  Plaintiffs justify

their reliance on their Complaint by citing "Defendants' choice to not depose Plaintiffs to ask

about the tools of trade," (Pls.' Br. 11 n.10); however, this decision by Defendants does not

absolve Plaintiffs of the obligation to put forth some affirmative evidence to support their claim.

"Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. . . .  [A]

proper summary judgment motion [may] be opposed by any of the kinds of evidentiary materials

listed in Rule 56(c), except the mere pleadings themselves . . . ."  *Celotex*, 477 U.S. at 324.

Accordingly, because Plaintiffs have adduced no evidence whatsoever indicating the existence of

unreimbursed work-related expenses, Defendants' motion for summary judgment on Plaintiffs'

claim for equipment costs is granted.

### D.   *Liquidated Damages and Willful Infringement*

Finally, I turn to the parties' cross-motions for summary judgment on the issues of

liquidated damages and willful infringement.  Defendants argue that I should find that liquidated

damages are not recoverable in this action based on Defendants' subjective good faith and

objectively reasonable grounds for believing that they were complying with the FLSA and the

NYLL.  (Defs.' Br. 11–14.)  Defendants further contend that, for many of the same reasons, I

should find the FLSA's three-year statute of limitations for willful infringers inapplicable here.

(*Id*.)  Plaintiffs respond that Defendants' violations of the FLSA were both willful and not in

good faith.  (Pls.' Br. 12–14.)  I agree with Plaintiffs that Defendants have not raised an issue of

fact sufficient to preclude summary judgment in Plaintiffs' favor on the question of liquidated

damages; however, I also find that no reasonable jury would conclude that Defendants' conduct

amounted to a willful violation of the FLSA.

### 1.  Applicable Law

Pursuant to 29 U.S.C. § 216(b), an employer who violates the minimum compensation

provisions of the FLSA is liable for both past due wages and, in addition, an equal amount of

liquidated damages.  *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL

4487788, at *15 (S.D.N.Y. Aug. 25, 2016).  The court, however, has "discretion to deny

liquidated damages where the employer shows that, despite its failure to pay appropriate wages,

it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260); *see also* 29 C.F.R. § 790.22(b) (explaining that where these conditions are met, a court "is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required in any judgment against the employer"). "The employer carries the burden of 'establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.'" *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 471 (S.D.N.Y. 2006) (quoting *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). The employer's burden is "a difficult one," with "double damages [being] the norm and single damages the exception." *Barfield*, 537 F.3d at 150 (citation omitted). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).

Similar to the federal scheme, the NYLL also provides for the recovery of liquidated damages. *See* N.Y. Lab. L. § 198(1-a) (providing for "the full amount of any [] underpayment [of wages], and an additional amount as liquidated damages, unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law"). "Although the text of the NYLL's liquidated damages provisions does differ from that of the text of the FLSA's liquidated damages provision, 'courts have not substantively distinguished the federal standard from the current state standard of good faith.'" *Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835(AT), 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11, 2015) (quoting *Inclan*, 95 F. Supp. 3d at 505).

The FLSA further provides for a two-year statute of limitations, unless the plaintiff can

demonstrate that the employer violated the act willfully, in which case the limitations period is

extended to three years.  *See* 29 U.S.C. § 255(a).  "An employer willfully violates the FLSA

when it either knew or showed reckless disregard for the matter of whether its conduct was

prohibited" by the statute.  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)

(quoting *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 107 (2d Cir. 2009)).  This does not

include "conduct that is merely negligent or unreasonable."  *Inclan*, 95 F. Supp. 3d at 503

(internal quotation marks omitted); *see also Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ.

2400(CM)(DCF), 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) ("[A]n employer does not

willfully violate the FLSA even if it acted unreasonably, but not recklessly, in determining its

legal obligation." (internal quotation marks omitted)).  The employee "'bears the burden of

proof' on the issue of willfulness for statute of limitations purposes."  *Parada v. Banco Indus. de

Venez., C.A.*, 753 F.3d 62, 71 (2d Cir. 2014) (quoting *Herman*, 172 F.3d at 141).

### 2.  Application

With respect to the issue of liquidated damages, I find that Defendants have failed to

demonstrate that they took "active steps to ascertain the dictates of the FLSA and then act to

comply with them."  *Herman*, 172 F.3d at 142.  Defendants contend that they "acted reasonably

and in good faith based on the representations made to them by their payroll company."  (Defs.'

Reply 11.)  However, I find that "even if defendants' evidence could show subjective good faith"

reliance on the company they retained to process their payroll, their evidence "fails to show

objectively reasonable grounds" for their belief that their practices comported with the FLSA's

and the NYLL's requirements.  *Copantitla*, 788 F. Supp. 2d at 317; *see also Inclan*, 95 F. Supp.

3d at 504.  As in *Copantitla*, Defendants "point to no advice that the accountant with whom

[they] consulted gave them that would have led them to think that [] either their failure to inform

26

employees that they were taking a tip credit or their failure to calculate [hourly wages] properly were legal."  788 F. Supp. 2d at 317 (granting summary judgment for plaintiffs on issue of liquidated damages under FLSA).  Rather, Ms. Nguyen only provided vague and imprecise testimony that she had hired a payroll company who would answer her payroll questions and "tell [her] what to do."  (Nguyen Tr. 50:10-18.)  This is plainly insufficient to support Defendants' effort to avoid the imposition of liquidated damages.  *See Dudley*, 2018 WL 481884, at *5 (granting summary judgment for plaintiffs on issue of liquidated damages where defendant "claim[ed] that she acted in good faith because she used a payroll service provider and believed that the provider would have notified [her] if [she] were not in compliance with the FLSA or the NYLL" (internal quotation marks omitted)); *Garcia*, 2015 WL 4940107, at *6 (awarding summary judgment to plaintiff on liquidated damages issue where defendants "d[id] not point to any misleading advice tendered by either the accountant or another professional that could support their claim of objectively reasonable grounds for Defendants' violations"); *cf. Inclan*, 95 F. Supp. 3d at 504 (declining to credit assertion that defendants had consulted with attorneys because "the record contain[ed] no evidence as to the advice of prior counsel nor of whether defendants followed that advice—far less whether the advice was erroneous").

Accordingly, I find that Defendants cannot sustain their "difficult" burden of demonstrating that the "exception," as opposed to the "norm" should apply.  *Barfield*, 537 F.3d at 150 (citation omitted).  As a result, I find that Plaintiffs are entitled to liquidated damages under the FLSA or the NYLL, as applicable, but not to be awarded cumulatively.[16]

---

[16] Although neither party specifically addresses whether Plaintiffs may recover liquidated damages cumulatively under both statutes, I conclude that they may not.  I recognize that some courts in this Circuit have awarded cumulative liquidated damages, *see e.g.*, *Ho v. Sim Enters., Inc.*, No. 11-CV-2855, 2014 WL 1998237, at *19 (S.D.N.Y. May 14, 2014); *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593–94 (S.D.N.Y. 2012); however, I am more persuaded by the view that cumulative liquidated damages are inappropriate because liquidated damages under both statutes serve the same purpose of "seek[ing] to deter wage-and-hour violations in a manner calculated to compensate the party harmed."  *Inclan*, 95 F. Supp. 3d at 506 (quoting *Chuchuca v. Creative Customs Cabinets Inc.*,

On the other hand, I conclude that no reasonable jury would find that Defendants' FLSA violations were willful.  As discussed, Ms. Nguyen testified that she retained the assistance of an outside payroll company in calculating Plaintiffs' wages.  (Nguyen Tr. 23:13-23, 50:10-18.) Although such retention is insufficient on its own to establish objectively reasonable grounds for Defendants' belief that their practices comported with the FLSA's and the NYLL's requirements, it does demonstrate some effort by Defendants to comply with the law.  Moreover, the record demonstrates that, although Defendants did not provide adequate notice to entitle them to claim a tip credit and did not correctly calculate Plaintiffs' minimum wage, *see supra* Parts IV.A.2.a, IV.B.2, Defendants maintained comprehensive employment records and permitted Plaintiffs to retain all of the tips they earned.  *See Jrpac*, 2016 WL 3248493, at *18 (no willfulness where "[t]he fact that the delivery workers generally received substantial sums in tips . . . suggest[ed] that defendants may have, mistakenly, believed that it was sufficient under the law that the total sums plaintiffs received (including via tips) exceeded the minimum wage"). This conduct does not support an inference that Defendants knew that they were violating the FLSA, or that they consciously disregarded the risk that they were doing so.  *See Kuebel*, 643 F.3d at 366 ("An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." (citation omitted)). At worst, Defendants acted negligently; however, mere negligence is insufficient to establish a willful FLSA violation.  *See Inclan*, 95 F. Supp. 3d at 503.  Accordingly, summary judgment is granted in favor of Defendants on the issue of willfulness and the applicable statute of limitations

---

No. 13-CV-2506, 2014 WL 6674583, at *16 (E.D.N.Y. Nov. 25, 2014)); *see also Jrpac*, 2016 WL 3248493, at *35. Moreover, after the enactment of the WTPA, which took effect on April 9, 2011, the amount of liquidated damages is identical under both statutes.  *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 91 n.11 (E.D.N.Y. 2012) (acknowledging that "[t]o the extent the federal and state statutes now provide for essentially identical remedies with respect to liquidated damages, it is harder to argue that they are designed to compensate a plaintiff for disparate harms").

on Plaintiffs' FLSA claims shall therefore be two years.

**V.   Conclusion**

For the reasons stated above, Defendants' motion for summary judgment and Plaintiffs' cross-motion for partial summary judgment are each GRANTED IN PART and DENIED IN PART.  Specifically, summary judgment is granted in favor of Plaintiffs with respect to liability on Plaintiffs' minimum wage and overtime claims under the FLSA, 29 U.S.C. §§ 206(a) and 207(a), and under N.Y. Lab. L. § 652(1) and 12 N.Y.C.R.R. § 146–1.4; however, because I find that Defendants' violations were not willful, Plaintiffs' FLSA claims are subject to a two-year statute of limitations.  Summary judgment is also granted in favor of Plaintiffs with respect to Plaintiffs' claims for failure to provide adequate annual notice of wages under N.Y. Lab. L. § 195(1) and Plaintiff Garcia's claim for failure to provide proper weekly wage statements under N.Y. Lab. L. § 195(3).  Summary judgment is granted in favor of Defendants with respect to Plaintiffs' claims for spread of hours violations under 12 N.Y.C.R.R. § 146–1.6, and for the recovery of equipment costs pursuant to 29 C.F.R. § 531.35 and 12 N.Y.C.R.R. § 146–2.7(c). The parties' respective motions for summary judgment are otherwise denied.

Because Plaintiffs have not attempted to prove the extent of their damages on their minimum wage and overtime claims, I grant summary judgment on those claims as to liability only.  I will refer the matter to a United States Magistrate Judge for a damages inquest as to those claims, with the instruction that Plaintiffs are entitled to liquidated damages under the FLSA or the NYLL, as applicable, but not to be awarded cumulatively.  As to Plaintiffs' N.Y. Lab. L. §§ 195(1) claims for failure to provide adequate annual wage notices, Plaintiffs have established that Garcia and Quiche are each entitled to $2,500 in statutory damages, plus reasonable costs and attorney's fees, while Valentin is entitled to $1,000 in statutory damages, plus reasonable

costs and attorney's fees.  In addition, Garcia has established that he is entitled to $5,000 in

statutory damages, plus reasonable costs and attorney's fees, for Defendants' violations of N.Y.

Lab. L. § 195(3).

An Order of Reference for a damages inquest and determination of reasonable attorney's

fees will issue shortly.  The Clerk of Court is respectfully directed to terminate the motions

pending at Documents 78 and 83.

SO ORDERED.

Dated: September 24, 2019
   New York, New York

Vernon S. Broderick
United States District Judge